UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                         :

UNITED STATES OF AMERICA            :
                         :
                         :

       -against-                    :           S6 15-CR-153 (VSB)
                         :
                         :           **OPINION & ORDER**

DARNELL FRAZIER,                 :
                         :
            Defendant.         :
                         :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/21/2019

**VERNON S. BRODERICK, United States District Judge:**

On November 13, 2017, following a nearly four-week trial, Defendant Darnell Frazier ("Defendant" or "Frazier") was convicted of conspiracy to distribute, or possess with intent to distribute, narcotics, in violation of Title 21, United States Code, Section 846.  Currently before me is Defendant's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  Because of the perfect storm of errors and misunderstandings detailed below, Frazier's motion for a new trial is GRANTED.

    **I.**      **Background and Procedural History**

        **A.**     *The Indictment*

On June 28, 2017, Frazier was charged in a two-count superseding indictment.  (*See* Doc. 266, "S6 Indictment.")  Count One charged Frazier and others with participating in a conspiracy from approximately 2011 through approximately August 2016 to distribute and possess with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1), including five or more kilograms of cocaine and 280 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A).  (S6 Indictment ¶¶ 1–3.)  Count Two charged Frazier and others with possessing firearms in furtherance of the narcotics conspiracy, pursuant to 18 U.S.C. § 924(c).  (*Id.* ¶ 4.)

### B.   *Trial*

Trial began on October 23, 2017, against Defendants Yonell Allums and Darnell Frazier.

### 1.  Testimony from Cooperators

At trial, four cooperating witnesses—Steven Christopher, Candice Southerland, Daryl Bracy, and Anthony Alexander—testified for the Government.  All four witnesses were members of the narcotics conspiracy at different points in time between 2011 and 2016 and described a single narcotics conspiracy that centered around a deli owned by Yonell Allums, the One Family Deli at 173 Woodworth Avenue in Yonkers, New York.  (*See, e.g.*, Trial Tr. 180, 183, 186, 682–83, 806–07, 1105–06, 1118–19.)  Two cooperators—Christopher and Alexander—described Frazier's role in the conspiracy.  Christopher testified that during his membership in the conspiracy from 2011 to 2013, Frazier made street-level sales of crack cocaine and marijuana, (*id.* at 192, 197); collected drug debts owed to other members of the organization, (*id.* at 243); acted as a middleman for larger sales by connecting customers with the supplier, Frazier's co-defendant Yonell Allums, for the purchase of kilogram quantities of cocaine, (*id.* at 245); and robbed other drug dealers to obtain drugs and money for the organization, (*id.* at 245–56).

Additionally, Christopher testified that on one occasion, Frazier sold him a kilogram of cocaine for Christopher to re-sell out of state in Vermont.  (*Id.* at 186–87.)  Christopher explained that Frazier overcharged him for that product, and that around the same time, two other individuals who had acted as muscle for the organization in the past returned to the organization.  (*See, e.g.*, *id.* at 186–88, 247–49.)  As a result, Christopher began cutting Frazier out of the drug business and relying more on those two individuals.  (*See id.* at 247–49.)  Christopher testified that this shift led to increased tension between him and Frazier, and

culminated in Frazier stabbing Christopher three times in 2012, in front of other members of the conspiracy. (*Id.* at 250–52.) Alexander also testified to Frazier's participation in drug robberies during the latter part of the conspiracy in 2015. (*Id.* at 1115–19.)

The remaining two cooperating witnesses—Bracy and Southerland—did not work directly with Frazier, but corroborated various portions of Christopher's and Alexander's testimony. For example, Bracy confirmed that Frazier, Christopher, Yonell Allums, and another co-conspirator named Kaheim Allums, were regularly at the One Family Deli between 2011 and 2012. Law enforcement witness Detective Marello also corroborated this point, testifying that between 2011 and 2014, he occasionally saw Frazier with Kaheim Allums at the One Family Deli. (*Id.* at 653.)

### 2. Admission of Yonell Allums's 1997 Testimony and Conviction

Prior to trial, the Government moved *in limine* to admit in its case-in-chief evidence relating to Yonell Allums's 1997 conviction for drug trafficking and firearms possession. (*See* Docs. 324–25.) After reviewing the parties' submissions on the issue and hearing argument during a pretrial conference, I reserved decision on the Government's motion until trial. (10/10/17 Tr. 34:4–20.)[1]

At trial, I issued a written order, permitting the Government to introduce, among other evidence, Allums's testimony from a 1997 trial, in which Allums admitted to selling large quantities of cocaine, crack cocaine, and heroin from 1992 to 1997, and to possessing a firearm to protect his drug business. (*See* Doc. 366; Trial Tr. 1573–84.) I concluded that, because Defendant Allums had put his knowledge and intent at issue during his counsel's opening statement and during the cross-examination of witnesses, the probative value of the testimony

---

[1] "10/10/17 Tr." refers to the transcript of the October 10, 2017 pretrial conference held in this matter.

was not substantially outweighed by prejudice.  (Doc. 366.)

Recognizing that Frazier did not meet Allums until several years after Allums's 1997 testimony, immediately before Allums's testimony was read aloud to the jury, I provided a jury instruction limiting the use of the evidence:

> Ladies and gentlemen, these exhibits are being admitted for a limited purpose, and the limited purpose is the following:  They are being admitted with regard to the elements of knowledge and intent as it relates to Mr. Allums.  It is not coming in . . . in any way, shape, or form as to Mr. Frazier.  In fact, Mr. Frazier is not alleged and in fact was not a participant in the activities that are discussed in the transcript that you are about to hear testimony from . . . .  Ladies and gentlemen, obviously, this is my initial instruction to you. It will be followed up by a more detailed instruction to you when I give you the jury instructions as a whole.

(Trial Tr. 1573–74.)  Both parties received a draft of the limiting instruction prior to its introduction and offered input as to the final language.  When charging the jury after the close of evidence, I again provided a specific instruction regarding the limited use of Allums's prior testimony and conviction.  (*Id.* at 2452–54.)

### 3.  Admission of Frazier's 1998 Conviction

Following the Government's case-in-chief, Frazier testified in his own defense.  Among other things, Frazier testified that he had not sold drugs at any point after 2011, (*id.* at 1783–84); that he had never possessed a gun, (*id.* at 1784); that he lacked knowledge that Christopher, Bracy, Yonell Allums, and Kaheim Allums were involved with drugs or guns, (*see id.* at 1829–33, 1836–37, 1840–42, 1885–88); and that he had never been inside the house at 173 Woodworth Avenue, which was located in the same building as the One Family Deli, (*id.* at 1831–32). Frazier admitted to stabbing Christopher, but insisted that he had not been seeking out Christopher on the day of the fight.  Frazier testified that the fight began when Christopher punched Frazier in the face for no reason, and that Frazier coincidentally had a knife on him, which he pulled out to cut Christopher.  (*Id.* at 1915–25.)

During cross-examination by the Government, Frazier was asked the following:

Q. And you know that Steven Christopher used to sell crack on Riverdale, right?

A. I do not know that.

Q. You know he used to carry guns on Riverdale, right?

A. I do not know that.

Q. You know he used to shoot guns on Riverdale, right?

A. Never seen him do it.

Q. You know all of that because you were with him on Riverdale when he did all of those things, weren't you, sir?

MR. MARGULIS-OHNUMA: Objection.

THE COURT: I will allow it. Overruled.

A. Absolutely not.

Q. *You personally sold crack on Riverdale with him, didn't you, sir?*

A. *No, I did not.*

Q. And you carried guns with him, didn't you, sir?

A. No, I did not.

Q. And you shot guns with him, didn't you, sir?

A. No, I did not.

(*Id.* at 1839:3–21 (emphasis added).) At a subsequent break that same day, the Government argued that it should be permitted to question Frazier regarding a 1998 controlled substance conviction in order to impeach his testimony regarding crack sales on Riverdale. In so doing, the Government asserted that during his testimony, Frazier denied ever selling crack on Riverdale. (*Id.* at 1876:5–8 ("I asked Mr. Frazier whether he ever sold crack with [Christopher]. He said no. **And I asked him whether he ever sold crack on Riverdale in general, and he said he never**

***sold crack on Riverdale***." (emphasis added)).)  The Government's statement concerning this

purported last question was a misrepresentation.  While Frazier had answered the first question

("You personally sold crack on Riverdale with [Christopher], didn't you?") in the negative, (*see*

Trial Tr. 1839:15–16), the follow-up question the Government claimed to have asked about

Frazier selling crack on Riverdale in general had not been asked.

   The Government now concedes that it offered a mistaken recollection of the above-

referenced testimony during this colloquy.  (Gov't Br. 4.)[2]  At the time, Frazier's counsel

assumed that the Government's description of his client's testimony was accurate.  (Trial Tr.

1877:3–7 ("I think the '90s conviction is a little old to be probative of something that happened

in 2011, but we don't want to leave the false testimony over there, incorrect testimony.  They can

clear it up.").)  Therefore, Defendant's counsel did not object to the proposed questioning

relating to the 1998 conviction.  (*Id.* at 1876–77.)  Specifically, defense counsel stated:

> I consulted with Mr. Frazier.  It's true that he was convicted in the '90s.  I don't
> think it's particularly relevant.  He made a mistake.  We can clear it up on cross or
> on redirect.  I just don't think it can be proved up extrinsically.

(*Id*. at 1876:13–17.)  During this discussion, I noted, "in light of the fact that Mr. Frazier has

taken the stand in response to the questions, knowledge and intent has now been placed in issue,

I think, pretty squarely with regard to both narcotics trafficking and possessing firearms," given

Frazier's testimony denying his knowledge of narcotics and firearms activity at One Family Deli.

(*Id.* at 1876:21–25.)  The Government indicated that the questioning on this topic would be "for

impeachment purposes," and I permitted the questioning for that purpose.  (*Id.* at 1877.)

Following this colloquy and my ruling, the Government cross-examined Frazier regarding his

---

[2] "Gov't Br." refers to the Government's Memorandum of Law in Opposition to the Defendant's Post-Trial Motion, filed June 22, 2018, (Doc. 567).

1998 conviction. (*Id.* at 1878–79.) The Government did not reference Frazier's 1998 conviction in its summation or rebuttal arguments, (Gov't Br. 5), and no instruction relating to the conviction was given to the jury, either at the time of the Government's cross-examination or during the jury charge.

### 4. Deliberations and Conviction

After deliberating for more than two days, the jury announced it had reached a verdict with regard to Yonell Allums, but was unable to reach a verdict with regard to all the charges against Frazier. After I instructed the jury to announce the verdict with regard to Yonell Allums, the jury announced a verdict of guilty with respect to Count One, conspiracy to distribute and possess with intent to distribute a controlled substance (cocaine and marijuana). (Doc. 384.) However, the jury found the amount of cocaine reasonably foreseeable to Allums to be the lesser-included amount of 500 grams or more of cocaine and 28 grams or more of crack cocaine. (*Id.*) The jury found Yonell Allums not guilty on the firearms count. (*Id.*)

After further deliberation and readbacks, the jury convicted Frazier of Count One, conspiracy to distribute and possess with intent to distribute cocaine and marijuana. (Doc. 385.) As it had with respect to Allums, the jury found the amount of cocaine reasonably foreseeable to Frazier to be the lesser-included amount of 500 or more grams of cocaine and 28 grams or more of crack. (*Id.*) The jury further found that Frazier was not personally responsible for and could not reasonably foresee the distribution of heroin. (*Id.*) The jury found Frazier not guilty of the firearms count under 18 U.S.C. § 924(c). (*Id.*)

### C. *Motion for a New Trial*

On June 2, 2018, Frazier filed this instant motion for a new trial, as well as a memorandum of law in support of his motion. (Docs. 556–57.) The Government filed its

opposition to Frazier's motion on June 22, 2018. (Doc. 567.) Frazier filed his reply on July 6, 2018. (Doc. 573.) On December 4, 2018, I heard oral argument from the parties, (Doc. 606, "12/4/18 Tr."), during which the parties provided responses to a list of questions I posed in an Order dated November 21, 2018 ("November Order"), (Doc. 604).

## II. <u>Legal Standard</u>

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court has "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). The court must "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation marks omitted). Because it is the jury's role to weigh evidence and assess a witness's credibility, a district court generally "must defer to the jury's resolution" of those issues. *United States* v. *Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (per curiam) (quoting *Sanchez*, 969 F.2d at 1414). Indeed, only in "exceptional circumstances" may a trial judge "intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *Sanchez*, 969 F.2d at 1414). "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Bell*, 584 F.3d at 483 (quoting *Sanchez*, 969 F.2d at 1414). "The defendant bears the burden of proving that he is entitled to a new trial . . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

## III.    Discussion

In seeking a new trial under Rule 33, Frazier argues that (1) his 1998 controlled substance conviction was introduced as the result of the Government's false representation to me, which deprived Frazier of due process of law; (2) the Government failed to prove the single conspiracy charged in the indictment; and (3) the readback of his co-defendant Yonell Allums's 1997 testimony resulted in "spillover prejudice" to Frazier.  I address each argument in turn.

### A.  *Admission of Frazier's 1998 Conviction*

#### 1.  Applicable Law

The Government may introduce evidence of a criminal conviction that is more than ten years old only under certain, limited circumstances.

##### a.  Impeachment by Contradiction

Under the common-law doctrine of impeachment by contradiction, evidence of a prior conviction—including a conviction that dates back more than ten years—may be admitted to directly contradict a witness's statement.  "When a defendant testifies about a specific fact either on direct or cross-examination, the prosecutor is entitled to prove on cross-examination that he lied as to that fact."  *United States v. Estevez*, 1998 WL 673186, at *3 (2d Cir. Sept. 22, 1998) (citing *United States v. Havens*, 446 U.S. 620, 627 (1980); *United States v. Beverly*, 5 F.3d 633, 639–40 (2d Cir. 1993)). "To impeach the defendant's credibility once he has taken the stand, the government may use evidence that it was barred from using in its case in chief."  *Id.*; *see also United States v. Atherton*, 936 F.2d 728, 734 (2d Cir. 1991) (rejecting "contention that the government should not have been permitted to impeach [defendant's] credibility on its rebuttal case through evidence that was barred from its case in chief").

Federal Rule of Evidence 403 governs the application of impeachment by contradiction. *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009); *see also United States v. Lopez*, 979 F.2d 1024, 1034 (5th Cir. 1992) ("Extrinsic evidence, which includes prior convictions, is admissible under the general standards of Rules 402 and 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice.")  Unlike Federal Rule of Evidence 609, which renders a criminal conviction more than ten years old presumptively inadmissible to attack a witness's character for truthfulness, *see infra* Part III.A.1.c, there is no time limit on the evidence that may be used to impeach a witness's testimony by contradiction.  *Lopez*, 979 F.2d at 1034.  Thus, pursuant to Rule 403, evidence that is introduced to demonstrate that a defendant has lied under oath is admissible unless "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### b.  Federal Rule of Evidence 404

Evidence of a criminal conviction may also be admitted for certain, limited purposes under Federal Rule of Evidence 404.  Rule 404(b) prevents the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, this same evidence may be introduced for other purposes, including to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Evidence of prior bad acts is admissible where "the prior acts evidence [i]s offered for a proper purpose" under Rule 404(b), the evidence [i]s "relevant to a disputed issue," and the probative value of the prior acts evidence is not substantially outweighed by the danger of unfair

prejudice. *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009); *see also United States v. Scott*, 677 F.3d 72, 83 (2d Cir. 2012) ("[E]vidence admitted under Rule 404(b) must not have its probative value substantially outweighed by its prejudicial effect."). When evidence of a prior crime is introduced under Rule 404(b), there is no presumptive limitation on the admission of criminal convictions that are more than ten years old. *See* Fed. R. Evid. 404(b); *cf. United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) (in evaluating whether a prior conviction is admissible under Rule 404(b), "the amount of time that has passed since the previous conviction is not determinative").

Rule 404(b) also contains a notice requirement. Upon request by a defendant, the prosecutor must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2)(a). "The purpose of Rule 404(b)'s notice provision is to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence." *United States v. Vilar*, 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008) (internal quotation marks omitted). For that reason, courts in this district have held that 404(b) notice must be provided "sufficiently in advance of trial that the Defendant has time to object to the evidence and the Court has adequate time to decide such an objection." *United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000) (quoting *United States v. Livoti,* 8 F. Supp. 2d 246, 250 (S.D.N.Y.1998)).

c. Federal Rule of Evidence 609

Finally, evidence of a criminal conviction may be admitted under Federal Rule of Evidence 609 to "attack[] a witness's character for truthfulness" in general. Fed. R. Evid. 609(a). Where more than ten years have passed since the witness's conviction or release from confinement for that conviction (whichever is later), evidence of the conviction is admissible

only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Advisory Committee note to Rule 609 provides that "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *See Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) ("We have recognized that Congress intended that convictions over ten years old be admitted 'very rarely and only in exceptional circumstances.'" (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. (93 Stat.) 7051, 7062)); *see also United States v. Sanders*, 964 F.2d 295, 297–98 (4th Cir. 1992) ("The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all." (internal quotation marks omitted)).

"[W]hen convictions more than ten years old are sought to be introduced into evidence pursuant to Rule 609(b) the district judge should make an on-the-record determination supported by specific facts and circumstances that the probative value of the evidence substantially outweighs its prejudicial effect." *United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978). It is often the case that "evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him" as the jury "can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged." *Sanders*, 964 F.2d at 297 (internal quotation marks omitted). Rule 609(b) further requires that the Government provide "reasonable written notice of the intent to use" evidence relating to a criminal conviction that is more than ten years old. Fed. R. Evid. 609(b)(2); *see also United States v. Hargrett*, No. 96-CR-17, 1996 WL 551090, at *8 (N.D.N.Y. Sept. 25, 1996) ("Rule 609(b) requires that the government give

advance written notice of its intent to impeach defendant testimony with convictions over ten years old.").

## 2. Application

Applying these rules to Frazier's 1998 conviction, I find that the conviction should not have been admitted into evidence at trial and that its erroneous admission is grounds for a new trial.

### a. Impeachment by Contradiction

At oral argument relating to the instant motion, the Government acknowledged that it sought to question Frazier regarding his 1998 controlled substance conviction solely to contradict a "specific piece of testimony" that, at the time, the Government believed Frazier had offered. (12/4/18 Tr. 18:20–21; *see also* Gov't Br. 4 (noting that the Government sought to introduce the 1998 conviction "to impeach [Frazier's] testimony regarding crack sales on Riverdale"); Trial Tr. 1877:8–9 (specifying that the conviction would be offered "for impeachment purposes").) The Government now acknowledges that in its exchange with me at trial regarding the 1998 conviction, it offered "a mistaken recollection of [Frazier's] testimony"[3]—characterizing Frazier's response that he had not sold crack cocaine on Riverdale with Mr. Christopher as a denial of his having sold crack cocaine on Riverdale in general. (*See* Gov't Br. 4, 10 (conceding that the Government "misremembered Frazier's precise testimony regarding crack sales on Riverdale during the argument requesting permission to question Frazier regarding his 1998

---

[3] At oral argument, in response to a question posed in the November Order, the Government disclosed that it first realized it had mischaracterized Frazier's testimony while preparing for summations during trial, and therefore decided not to mention Frazier's 1998 conviction during its summation or rebuttal. (*See* 12/4/18 Tr. 26:9–12 ("And in going back, we saw it wasn't a one to one between what he testified to originally and the second part. So we dropped it. We didn't bring it up in our closing or our rebuttal.").) The Government, however, did not notify me of this error at that time. Therefore, I did not have the opportunity to discuss with the prosecution and the defense the possibility of striking the erroneously elicited testimony and providing a curative instruction to the jury.

conviction").)

Although the 1998 controlled substance conviction would have contradicted the testimony that the Government, during trial, contended Frazier gave—i.e., that Frazier had never sold crack cocaine on Riverdale—it did not contradict the testimony that Frazier in fact offered—i.e., that he had never sold crack cocaine on Riverdale with Christopher. I therefore find that because Frazier never "forswore, as a universal matter," ever having sold drugs on Riverdale, there was no basis for admitting his 1998 conviction under the impeachment by contradiction doctrine. *United States v. Ramirez*, 609 F.3d 495, 500 (2d Cir. 2010); *see also id.* at 500–01 (evidence offered to impeach defendant's alleged statements that he had never seen or handled drugs should have been barred where defendant "never gave the testimony that the government ascribe[d] to him" and had not "staked his credibility before the jury on any expansive assertion about lifelong avoidance of drugs"); *cf. Beverly*, 5 F.3d 633 at 640 (where defendant testified that he had no familiarity with guns, he opened the door to impeachment by evidence of several prior incidents in which he allegedly possessed and used firearms).

### b. Rule 404

Having acknowledged that Frazier did not in fact offer testimony that was directly contradicted by the 1998 conviction and that the conviction therefore was not properly introduced to impeach a false statement, the Government contends that "such error was harmless because the conviction was nevertheless admissible under Federal Rule of Evidence 404(b)" to establish knowledge and intent. (Gov't Br. 11.)

I agree that Frazier placed his knowledge and intent at issue during trial. He repeatedly denied knowledge of the fact that his alleged co-conspirators sold drugs at the One Family Deli between 2011 and 2016. (*See, e.g.*, Trial Tr. 1829–33, 1836–37, 1840–42, 1885–88.) I also

accept that Frazier's prior controlled substance conviction made it somewhat more likely that he would recognize subsequent drug sales occurring around him during the 2011–2016 time period. (*See* Gov't Br. 11.) However, the introduction of Frazier's 1998 conviction for an offense similar to the offenses with which he was charged here carries a substantial risk of prejudice. *See, e.g.*, *Sanders*, 964 F.2d at 297 (noting that a jury "can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged"); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("A prior conviction is material to a defendant's intent (when intent is in issue), but it is also prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes."). The risk of prejudice was compounded by the fact that Frazier's 1998 conviction related to criminal activity on Riverdale Avenue—a location that was mentioned at various points during the trial as a place that members of the conspiracy frequented, as the site of Frazier's stabbing of Christopher, and as the place where Christopher sold drugs and fired weapons. (*See, e.g.*, Trial Tr. 426–27, 654, 822, 1070, 1839.) Moreover, because the Government did not provide reasonable 404(b) notice*, see infra*, there was no opportunity to discuss the potential prejudice that might result from the introduction of Frazier's 1998 conviction on cross-examination.

However, I need not evaluate whether the probative value of the 1998 conviction was substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, because I find that the Government failed to satisfy Rule 404(b)'s notice requirement. Although the 1998 conviction was listed on Frazier's rap sheet, which was produced in discovery, (12/4/18 Tr. 12:14–15), the Government affirmatively represented to Frazier prior to trial that it did not intend to introduce the 1998 conviction at trial. First, the Government submitted a letter dated

September 8, 2017 ("9/8/17 Gov't Ltr."),[4] in which it listed those of Mr. Frazier's prior bad acts that it wished me to consider under Rule 404(b)—that letter explicitly stated that the Government "d[id] not intend to prove" Frazier's 1998 conviction during trial.  (9/8/17 Govt. Ltr. at 3–4.) Second, the Government did not mention the 1998 conviction at the October 10, 2017 hearing during which it laid out for me its proposed Rule 404(b) evidence.  (*See* 10/10/17 Tr.)  Finally, the Government failed to mention during the colloquy that preceded Frazier's testimony at trial that it intended to either (1) affirmatively cross-examine Frazier about the 1998 conviction or (2) cross-examine Frazier about the conviction if the "door was opened," despite noting other 404(b) issues that the Government planned to raise during its cross-examination of Frazier.  (Trial Tr. 1692–1712.)[5]  During oral argument on the instant motion, the Government conceded that it "never affirmatively took [the 1998] conviction and put it in the bucket of we would like to ask questions about this."  (12/4/18 Tr. 13:1–3.)

In contrast, when the Government sought to admit Yonell Allums's 1997 conviction for drug trafficking and firearms possession—offenses that were also similar to the offenses with which Allums was charged here—the Government filed a motion *in limine* seeking advance permission to introduce that evidence.  (*See* Docs. 324–25.)  This issue was further subject to oral argument during a pretrial hearing.  (*See* 10/10/17 Tr.)  This achieved the objective of Rule 404(b)'s notice provision—that is, "to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence."  *Vilar*, 530 F. Supp. 2d at 640 (internal

---

[4] This letter to defense counsel provided notice under Fed. R. Evid. 404(b) of both Frazier's prior acts that the Government intended to prove at trial and those that it did not intend to introduce.  The letter was sent to my Chambers email address but was not filed on the docket.  The Government is directed to review this letter to determine if redactions are appropriate.  If no redaction is necessary, the Government is directed to file this letter on the docket.  If the Government believes redaction is appropriate, it is directed to follow the procedures outlined in Rule 10.E. of my Individual Rules & Practices in Criminal Cases.

[5] Having received the Government's September 8, 2017 letter, I also note that I did not raise the issue of Frazier's 1998 conviction once it was disclosed that he would testify at trial.

16

quotation marks omitted). No such advance notice was provided with respect to Frazier's 1998 conviction, which the Government mentioned for the first time during Frazier's cross-examination at trial. (*See* Trial Tr. 1876:3–11.) I therefore find that because the Government failed to provide reasonable notice of its intent to introduce the 1998 conviction, as required by Fed. R. Evid. 404(b)(2), the conviction was inadmissible under Rule 404(b).

### c. Rule 609

Frazier's 1998 conviction was similarly inadmissible under Rule 609(b). As the Government acknowledges, it intended to introduce the conviction to contradict specific testimony offered by Frazier—not to impeach Frazier's character for truthfulness in general. Rule 609 governs only the latter scenario. *See Lopez*, 979 F.2d at 1033 ("The fundamental problem with the application of . . . Rule 609 is that [the rule does not apply] in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue." (internal citations and quotation marks omitted)). Because the Government did not plan to offer the 1998 conviction pursuant to Rule 609, it did not provide the advance written notice mandated by Rule 609(b). At oral argument, the Government explained:

> We agree, your Honor, that had we intended to use [the 1998 conviction] as just a basis for impeaching [Frazier] for general untruthfulness, right, which is—if you're going to impeach somebody with a felony conviction to just say well you were convicted of a felony therefore you're not truthful . . . . That was not the case here. We weren't trying to do that. So we agree that if we were trying to do that, if that had been the case, we would have had to give notice.

(12/4/18 Tr. 17:11–22.) Moreover, I did not make an on-the-record determination that the probative value of the 1998 conviction "substantially outweigh[ed] its prejudicial effect." Fed. R. Evid. 609(b)(1); *see also Mahler*, 579 F.2d at 736 (requiring district courts to make such a determination prior to admitting a conviction more than ten years old pursuant to Rule 609(b)).[6]

_____

[6] The failure to explicitly perform a fact-based balancing under each of the rules or doctrines discussed above was a

Even if the appropriate notice had been provided under Rule 609 such that I could have performed the requisite balancing, the law is clear that convictions that are more than ten years old may only be admitted "in exceptional circumstances," *Zinman,* 983 F.2d at 434, and "admitted sparingly if at all." *Sanders*, 964 F.2d at 297–98. Such circumstances do not appear to have been present here. Therefore, Frazier's 1998 conviction could not have been admitted under Rule 609(b).

### d.  Effect of Erroneous Admission

"Erroneous admission of a defendant's prior conviction normally warrants a new trial," *Figueroa*, 618 F.2d at 944 (citing *United States v. Rinaldi*, 301 F.2d 576 (2d Cir. 1962)), and I conclude that a new trial is necessary here for several reasons. First, Frazier's 1998 conviction for the sale of crack cocaine was similar to the offense with which he was charged here, creating a situation in which the jury could "hardly avoid drawing the inference that the past conviction suggests some probability that [Frazier] committed the similar offense for which he is currently charged." *Sanders*, 964 F.2d at 297 (internal quotation marks omitted). In addition, as noted above, *see supra* Part III.A.2.b, Frazier's 1998 drug sales occurred on Riverdale Avenue—a location associated with criminal activity at issue during this trial:  Riverdale was identified as (1) a hangout for members of the conspiracy, (*see, e.g.*, Trial Tr. 426–27, 654); (2) the site where Christopher sold drugs and fired guns (a subject Frazier was cross-examined about) (*see id.* at 1839:3–21); and (3) the place where Frazier stabbed Christopher in 2012, (*see, e.g., id.* at 822,

---

mistake on my part.  *See Mahler*, 579 F.2d at 736 ("[W]hen convictions more than ten years old are sought to be introduced into evidence pursuant to [Fed. R. Evid.] 609(b) the district judge should make an on-the-record determination . . . that the probative value of the evidence substantially outweighs its prejudicial effect."); *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (noting that, as part of the "test for admission of other acts evidence under Rule 404(b)[,] . . . the evidence must satisfy the probative–prejudice balancing test of Rule 403" (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988))); *Lopez*, 979 F.2d at 1034 (permitting cross-examiner to introduce evidence to impeach specific testimony by contradiction, "as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice").

1070).  These parallels render the erroneous admission of Frazier's 1998 conviction for the sale of drugs on Riverdale particularly prejudicial.

Moreover, not only was Frazier's 1998 conviction erroneously admitted, but the resulting line of questioning forced Frazier to admit, at worst, that he had lied under oath and, at best, that he had misunderstood the prosecutor's earlier questions.  Indeed, that is in fact what occurred after the Government represented to me that Frazier had lied during his testimony and I permitted the Government to cross-examine Frazier about his 1998 conviction.  Specifically, during the subsequent cross-examination, the following exchange transpired:

Q.  I'd like to go back to something that you were talking about earlier, Mr. Frazier.  You remember when I asked you whether you ever sold crack on Riverdale?

A.  Yes.

Q.  ***You testified that you have never sold crack on Riverdale before, right?***

A.  ***Yes.  I misunderstood your question.***

Q.  You misunderstood my question, have you ever sold crack on Riverdale?

A.  Yes.

Q.  Because in fact you have sold crack on Riverdale, right?

A.  Yes.

Q.  In 1998, you sold three bags o[f] crack at East 51 Riverdale Avenue, right?

A.  Yes.

. . . .

Q.  You were arrested for that sale, right?

A.  Yes.

Q.  Then you were convicted of a felony as a result, right?

A.  Yes.

(Trial Tr. 1878:5–1879:1 (emphasis added).)  Thus, Frazier was effectively required to concede that he had lied on the stand by supposedly "testif[ying] that [he had] never sold crack on Riverdale before."[7]  However, of course, it is now clear that Frazier had not lied—that question had never been asked.

This concession was particularly damaging.  While there was other evidence in the record that could have permitted the jury to conclude that Frazier's testimony on direct and cross-examination was less than candid, Frazier's testimony during this exchange rendered any credibility assessment essentially unnecessary.  Frazier's statement that he had misunderstood the prosecutor's questions could either be viewed by the jury as an admission that he had lied about his prior conviction or as a disingenuous excuse—either way, the jury was likely to conclude that Frazier was not a credible witness.  I therefore find that the introduction of Frazier's 1998 conviction, and the resulting testimony that Frazier's earlier statements under oath had been inaccurate "may well have been decisive to the outcome of the jury's deliberation," and that a new trial is warranted.  *See Figueroa*, 618 F.2d at 944; *see also United States v. Pagan*, 721 F.2d 24, 31 (2d Cir. 1983) (granting new trial after erroneous admission of prior conviction where court was unable to conclude that the admission "did not influence the jury or had but very slight effect" (internal quotation marks omitted)).

---

[7] Although Frazier did not expressly acknowledge having lied under oath, his admission that he had "misunderstood" the Government's supposed question relating to whether he had ever sold crack on Riverdale was tantamount to an admission that his testimony had been untruthful.  Frazier certainly knew that he had previously sold—and had been criminally convicted for selling—crack on Riverdale and the Government's phrasing of the question—i.e., "You remember when I asked you whether you ever sold crack on Riverdale?," (Trial Tr. 1878:6–7)—left little room for interpretation or misunderstanding.

### B.  *Proof of Conspiracy*

Because I have concluded that the Government should not have been permitted to cross-examine Frazier regarding his 1998 controlled substance conviction and that this line of questioning requires that Frazier receive a new trial, I need not consider Frazier's additional arguments related to the charged conspiracy and the admission of evidence related to Yonell Allums's 1997 narcotics conviction.  However, in order to create a complete record of my decision on the remaining portions of Frazier's motion, I will address them nonetheless.

### 1.  Applicable Law

In order to sustain a conspiracy conviction, "the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."  *United States v. Hassan,* 578 F.3d 108, 123 (2d Cir. 2008) (internal quotation marks omitted).  "The government may prove the defendant's knowing participation in a conspiracy through circumstantial evidence," including, for instance, the defendant's association with co-conspirators, his presence at critical stages of the conspiracy, and his possession of items of essential significance to the conspiracy.  *United States v. Anderson*, 747 F.3d 51, 60–61 (2d Cir. 2014).

Federal Rule of Criminal Procedure 31(c)(1) provides that a defendant may be found guilty of "an offense necessarily included in the offense charged."  Citing Rule 31, the Second Circuit has repeatedly "made clear that an 'indictment need not charge the defendant with the lesser included offense in order for the trial court to submit that offense to the jury.'"  *United States v. Taylor*, 816 F.3d 12, 18 (2d Cir. 2016) (quoting *United States v. Dhinsa,* 243 F.3d 635, 674 (2d Cir.2001)).  Where a defendant has been charged with conspiracy to distribute, or to

possess with intent to distribute, a certain quantity of drugs, the jury may permissibly convict the defendant of a lesser drug quantity than that charged in the indictment, provided that the district court has properly instructed the jury, first, as to the two "essential elements of conspiracy—the existence of a conspiracy and [defendant's] willfully joining it," and, second, as to the separate drug quantity element. *Id.* at 19.

A defendant charged with conspiracy may establish a "multiple conspiracies" defense if: "(1) the indictment charged a single conspiracy, but the proof disclosed several independent conspiracies, and (2) [the] defendant was so prejudiced by this variance as to be denied a fair trial." *United States v. Pena*, 274 F. App'x 84, 85 (2d Cir. 2008) (summary order) (quoting *United States v. Desimone*, 119 F.3d 217, 225–26 (2d Cir. 1997)). However, a "single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) (internal quotation marks omitted). In addition, "[c]hanges in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006).

### 2. Application

Frazier argues that the Government failed to prove beyond a reasonable doubt the single conspiracy charged in the indictment—that is, that Frazier conspired with others to distribute and possess with the intent to distribute controlled substances. (S6 Indictment ¶¶ 1–3.) While the superseding indictment charged Frazier with conspiring to distribute and possess with the intent to distribute five kilograms and more of cocaine and 280 grams and more of crack cocaine, as well as quantities of heroin and marijuana, the jury found that the narcotics conspiracy of which

Frazier was a part was responsible for a lesser-included weight of cocaine (500 grams or more), and crack cocaine (28 grams or more). (Doc. 385.) The jury also found that Frazier's conspiracy did not involve heroin, and acquitted Frazier of a related firearms offense. (*Id.*) However, the fact that the jury did not convict Frazier on every count charged in the indictment—or of the drug amounts alleged in the indictment—in no way indicates that the Government failed to prove Frazier's membership in the narcotics conspiracy on which the jury did convict him. *See, e.g.*, *United States v. Carneglia*, 47 F. App'x 27, 34 (2d Cir. 2002) (finding it "entirely possible" that a jury might reasonably find a defendant guilty of conspiracy but find reasonable doubt as to other charges); *Taylor*, 816 F.3d at 19 (conviction for conspiracy to distribute a lesser-included drug weight is "entirely appropriate"). Christopher's testimony that Frazier, among other things, personally sold crack cocaine and marijuana as a member of the drug organization led by Yonell Allums, (Trial Tr. 192, 197); made sales to customers of cocaine and crack cocaine he had obtained from Allums, (*id.* at 188–89); and asked Christopher to resell a kilogram of cocaine that Frazier had obtained from Allums in Vermont, (*id.* at 186–87), provided ample evidence to support Frazier's conviction.

The fact that the jury convicted Frazier of a lesser-included drug weight similarly does not indicate that the Government failed to prove the charged conspiracy. It is well-established that an "indictment need not charge the defendant with the lesser [included] offense in order for the trial court to submit that offense to the jury." *Dhinsa*, 243 F.3d at 674. Here, the jury charge correctly set forth the elements of a conspiracy and instructed the jury to first consider whether Frazier was guilty of entering into a conspiracy and to consider the question of drug quantity separately. (*See* Trial Tr. 2420:19–2421:12; 2427:20–24 ("[I]f you do find that the government has proved the elements of Count One of the indictment beyond a reasonable doubt, you will

then be asked to make a finding about the type, and if applicable, quantity of the controlled substances.").) As in *United States v. Taylor*—where the Second Circuit held that a conviction for conspiracy to distribute a quantity of drugs less than the quantity charged in the indictment was not an impermissible constructive amendment to the indictment—the jury was provided with a "special verdict form separat[ing] the issue of conspiratorial liability from [drug] quantity, expressly giving the jury the option of finding [defendant] guilty of a conspiracy involving five kilograms or more of cocaine, or of the lesser included offenses of a conspiracy involving 500 grams or more or less than 500 grams." 816 F.3d at 19. Thus, Frazier's conviction for conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine and more than 28 grams of crack cocaine "is simply a conviction for a lesser included offense of the offense charged in the indictment, which is entirely appropriate under Federal Rule of Criminal Procedure 31(c)." *Id.*; *see also United States v. Cabrera-Beltran*, 660 F.3d 742, 753 (4th Cir. 2011) ("A defendant charged with conspiracy to import or distribute an amount of a controlled substance can, if the evidence warrants, be convicted of one of the lesser included offenses based on a smaller amount of the substance." (internal quotation marks omitted)).

Frazier also raises a multiple conspiracies argument. Specifically, he contends that the Government did not connect robberies about which Christopher and Alexander testified to the alleged drug conspiracy, "and thus failed to prove to the jury the single conspiracy it charged." (Frazier Br. 12.)[8] A multiple conspiracies defense may be established where "(1) the indictment charged a single conspiracy, but the proof disclosed several independent conspiracies, and (2) [the] defendant was so prejudiced by this variance as to be denied a fair trial." *Pena*, 274 F.

---

[8] "Frazier Br." refers to the Memorandum of Law in Support of Defendant Darnell Frazier's Motion to Vacate Conviction and Dismiss Indictment or, as a Lesser Alternative, for a New Trial Pursuant to F.R.Crim.P 33, filed June 2, 2018, (Doc. 557).

App'x at 85 (internal quotation marks omitted). Here, however, I gave a multiple conspiracies charge to the jury specifically to address the concern that the jury might view the robberies about which Christopher and Alexander testified as part of a separate conspiracy, and not in furtherance of the conspiracy with which Frazier was charged. (*See* Trial Tr. 2439:9–2440:14 ("Proof of several separate and independent conspiracies is not proof of the single conspiracy, overall here narcotics [] conspiracy as charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy as described in the indictment.").) As Frazier conceded at oral argument, he was unable to identify any cases—and I have found none—in which a new trial was granted on the basis of multiple conspiracies where the indictment charged a single conspiracy and the trial court provided a jury instruction on the law of multiple conspiracies to safeguard against the jury using evidence of an unrelated conspiracy to convict the defendant of the conspiracy with which he was charged. (*See* 12/4/18 Tr. 3:6–4:24.) I find that the instruction to the jury on the subject of multiple conspiracies cured any potential prejudice to Frazier resulting from the introduction of Christopher's and Alexander's testimony relating to the robberies.

Finally, in a pair of footnotes, (Frazier Br. 6 n.3, 13 n.6), Frazier contends that he was convicted on the conspiracy count because the jury improperly relied on an audio recording of an August 9, 2016 telephone call, in which Yonell Allums discussed a text message from Frazier informing Allums that Frazier's federal case had been dismissed. During its rebuttal, the Government made the following statement relating to the audio recording:

> And how does Yonell Allums react [to the message that Frazier's federal case had been dismissed]? He says the feds must have dismissed the case because they're either building a bigger case or because Darnell Frazier went in there and cooperated. Why would Yonell Allums think that those are the only two possibilities for why a case is dismissed? Because he knew then what you all know now, that Yonell Allums and Darnell Frazier were in the drug business together

25

> selling massive amounts of drugs and carrying guns to protect their drug business, and he was worried that Darnell Frazier could bring it all down.

(Trial Tr. 2393:17–2394:2.)  Frazier did not object to this statement by the Government.  The jury subsequently requested a playback of the audio recording during its deliberations.  After the recording was played back, I gave a limiting instruction that the jury was "not to speculate on why Mr. Frazier was incarcerated" or to "consider the fact that Mr. Frazier was incarcerated as evidence that he has a criminal personality or bad character.  The evidence was admitted only for the limited purpose of showing Mr. Frazier was not available during these time periods."  (*Id.* at 2530:22–2531:2.)  Frazier now argues that, in its rebuttal, the Government invited the jury to rely on the audio recording for an improper purpose.

As an initial matter, because Frazier did not object to the Government's characterization of the audio recording during its rebuttal, his challenge was arguably not preserved.  *See King v. Greiner*, No. 02 Civ. 5810 (DLC)(AJP), 2008 WL 4410109, at *18 (S.D.N.Y. Sept. 26, 2008).  In addition, "[a]rguments which appear in footnotes are generally deemed to have been waived."  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 7, 2007).  Moreover, the Government's statements during rebuttal preceded my limiting instruction with respect to the audio recording, which I provided during jury deliberations.  The Government should not be penalized for making an argument that allegedly exceeded the bounds of a limiting instruction that had yet to be provided, particularly where the audio recording was independently admissible as a non-hearsay statement of one of Frazier's co-conspirators, Yonell Allums.  *See* Fed. R. Evid. 801(d)(2) (statement "made by the [opposing] party's coconspirator during and in furtherance of the conspiracy" is not hearsay).  Finally, the Government's statements speculated neither as to why Frazier was incarcerated nor as to what his incarceration

might indicate about his character. I therefore find that the Government's statements during rebuttal regarding the 2016 audio recording were entirely appropriate.

### C. *Admission of Yonell Allums's 1997 Testimony and Conviction*

Finally, Frazier contends that evidence that was introduced with respect to Yonell Allums's prior 1997 conviction resulted in spillover prejudice to Frazier, who had nothing to do with those prior convictions. Because I provided a clear limiting instruction to the jury at the time this evidence was introduced, I find that Frazier's argument lacks merit.

#### 1. Applicable Law

Spillover prejudice results where "the jury, in considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant." *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003). Where the trial court provides a limiting instruction directing the jury to assess the evidence against one defendant separately from the evidence presented against other defendants, "the possibility of prejudicial 'spillover' is minimal to non-existent." *United States v. Brown*, No. 04 CR 801 PKC, 2006 WL 2724025, at *14 (S.D.N.Y. Sept. 22, 2006) (quoting *United States v. Joyner,* 201 F.3d 61, 80 (2d Cir. 2000)); *see also United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (finding no prejudice where "the district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately"); *United States v. Diaz*, 176 F.3d 52, 104 (2d Cir. 1999) ("[E]ven when the risk of prejudice is high, measures . . . such as limiting instructions, often will suffice to cure any risk of prejudice." (internal quotations omitted)).

## 2. Application

At trial, Frazier objected to my admission of Yonell Allums's 1997 trial testimony only on the ground that it would cause spillover prejudice; he did not raise any arguments as to whether Allums had put his own knowledge and intent at issue. (Trial Tr. 891:5–893:3.) To the extent that Frazier now contests my finding that Allums did in fact put knowledge and intent at issue, thereby justifying the introduction of Allums's 1997 testimony, I rejected that same argument by Allums first at trial, (*see* Doc. 366), and again in my Opinion & Order on Allums's motion for a new trial, (Doc. 544).

I further find that Frazier's contention that he was unduly prejudiced by the admission of Allums's testimony and prior conviction to be wholly speculative. I addressed this argument in a written order during trial and explained that, "to the extent that this evidence is arguably prejudicial as to Defendant Frazier—which it is not—a curative instruction to the jury that this evidence will be used only against Allums exclusively on the issue of Allums's knowledge and intent would more than amply address any such concern." (Doc. 366.) I followed that order with an unambiguous instruction to the jury, explicitly stating that Allums's 1997 testimony was "not coming in . . . in any way, shape, or form as to Mr. Frazier. In fact, Mr. Frazier is not alleged and in fact was not a participant in the activities that are discussed in the transcript that you are about to hear testimony from." (Trial Tr. 1573–74.) This instruction could hardly have been clearer.

Moreover, during the jury charge after the close of evidence, I again reminded the jury that "this evidence was admitted only against Mr. Allums and not against Mr. Frazier. Mr. Frazier was not involved in Mr. Allums' prior crimes." (*Id.* at 2453:4–6.) These instructions went beyond directing the jury to consider this evidence with respect to Defendant Allums only,

*see Rittweger*, 524 F.3d at 179 (finding that a limiting instruction that certain evidence could not be considered against a particular defendant eliminated the risk of spillover prejudice); they further specified that Frazier was wholly uninvolved in the crimes about which Allums testified during the 1997 trial. I therefore find that my limiting instructions made it abundantly clear that Frazier was not involved in Allums's prior crimes and therefore eliminated any risk that the jury considered the 1997 trial testimony or Allums's resulting conviction as relevant to Frazier.

## IV. Conclusion

For the reasons stated above, Defendant Frazier's motion for a new trial is GRANTED.

As the Government conceded in its December 14, 2018 letter, (Doc. 609), in light of the jury's findings during the first trial, the Government may only proceed during a retrial on charges of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, 28 grams or more of cocaine base, and marijuana.

The parties are directed to confer and to be prepared to discuss next steps during the scheduled February 25, 2019 conference in this matter.

The Clerk of the Court is respectfully directed to terminate the pending motion at Document 556. The Clerk is further directed to terminate the pending motions at Documents 25, 102, 124, 130, 148, 163, 172, 222, 252, 323, 324, 326, 328, 330, 339, 345, 357, 529, and 537, as each of these motions was previously resolved.

SO ORDERED.

Dated: February 21, 2019
    New York, New York

Vernon S. Broderick
United States District Judge